### 7487. CITY OF DAWSON *v.* SMITH.

Under the plaintiff's allegations, he had a cause of action against the city for injuries caused by electricity from electric-light wires of the city on which the insulating material had become worn, and with which he came in contact on his way from work as a lineman of a telephone company, when descending the telephone company's pole to which they were attached.

DECIDED SEPTEMBER 21, 1916.

Action for damages; from city court of Dawson—Judge Edwards. April 20, 1916.

*R. R. Marlin, Yeomans & Wilkinson,* for plaintiff in error.

*R. L. Berner, L. J. Blalock, J. A. Hixon, Marshall & Pace,* contra.

HODGES, J. The petition alleged that the plaintiff was a lineman for a telephone company. He was an electrician by trade, or proposed to become an electrician. Also it was alleged that he had no expert knowledge of electricity. He was nineteen years old, was earning $2 per day, and was injured by contact with a wire conveying electricity from the plant owned and operated by the city of Dawson, which wire was strung on the pole of the telephone company, and was wholly without insulation, "the insula-

tion on same having been entirely worn off." By an amendment he struck the words within the quotation marks above, and alleged that the insulating material had become so worn that it was not sufficient to protect him. He alleged that he was at work upon the telephone wires, which were strung at the top of a fifty-foot pole. Twelve feet below the telephone wires were certain twenty-four inch cross-arms, on which were strung four of the defendant's electric wires, designated as feed, primary, secondary, the fourth wire being designated as an arc-circuit wire; and the latter wire was attached to the post by a bracket. It was alleged that one of these wires carried 2300 volts of electricity; that it was necessary for him, in order to reach the telephone wires above, to pass through and over the wires above mentioned, and that in the performance of his duty, on the day of his injury, he went through said wires or ascended and descended said poles in safety twice, but that the third time, he was caught in attempting to come down between the wires of the defendant company and severely burned and otherwise injured; that on the day he was injured it was warm, and he so exerted himself, in climbing said pole and performing said duties on said telephone wires, that he perspired freely, and his clothes when he started to descend were wet with perspiration; that he had never been cautioned or warned as to this, and did not know that he was much more liable to be injured in this condition than otherwise; that he was inexperienced and unacquainted with the danger incident to electricity, and of coming in contact with wires of an electric plant of the amount of electricity carried by the said primary and secondary wires at said point, and with the danger incident to allowing his body to come in close proximity thereto when his clothes were wet with perspiration, and he could not by the exercise of ordinary care on his part have known that it was dangerous for him to touch said wires or allow his body to approach close to them; that the lack of insulation was not apparent to him, nor discoverable by the use of ordinary care, there being still enough insulating material on the wires to cover them, and that the defendant was negligent in allowing its wires to become and remain uninsulated, in not giving notice of the dangerous condition of the wires, etc.

To the petition a demurrer was interposed, and the court refused to dismiss the petition as amended. We do not think the

court erred in so ruling. Counsel for the plaintiff in error contend that the case is controlled by the decision in *Columbus Railroad Co.* v. *Dorsey,* 119 *Ga.* 363 (46 S. E. 635). In that case it was held that "Where a lineman of a telephone company, of experience, aged nineteen years, was killed by contact with a wire of an electric-lighting company, which had been strung on the poles of the telephone company, and from which wire the insulation had worn off near the pole which he had climbed, and for several feet on each side of the pole, he knowing or being able to know, by ordinary diligence, that the wire was so exposed, his mother can not recover from the electric-lighting company the value of his life." In the opinion Justice Turner, speaking for the court, said: "It was conceded by counsel for the defendant in error that it was to be presumed that this unfortunate lineman did know that the wire of the plaintiff in error was strung upon the pole of the telephone company, and that he also knew that at or near this pole, and for several feet on each side of it, the wire was naked or without necessary insulation. It seems, also, that he was a young man of experience in his business, earning two dollars a day." When that case was returned to the lower court certain amendments were offered by the plaintiff and were disallowed, and the case was dismissed. It was again carried to the Supreme Court, and the court held: "The amendments allowed when the case was returned to the court below did not cure the defect apparent in the petition when it was before this court on a former occasion (119 *Ga.* 363), to wit, that it was necessarily inferable from the plaintiff's allegations that her son, for whose homicide she sued, could, by the exercise of reasonable care, have avoided the consequences of the defendant's negligence; and it was therefore not error to sustain the demurrer to the petition as amended." *Dorsey* v. *Columbus Railroad Co.,* 121 *Ga.* 697 (49 S. E. 698). Justice Candler, speaking for the court, referred to the concession made upon the former hearing in the Supreme Court; and in criticising the amendment in which it was alleged that a certain iron spur, worn by Dorsey, slipped from the wood of the pole in which it was attached, and that he fell in such a way that his foot came in contact with an uninsulated wire, and his head with one of the wires of the telephone company, thus completing an electric circuit and causing his death, Justice Candler

said: "Here, we think, is the key to the whole case. By necessary inference from the amendment, Dorsey knew that an electrical circuit formed by the contact of his body with the uninsulated wire on the one hand and the grounded telephone wire on the other would be dangerous to life. . . He must have known (there is no allegation to the contrary) that the position of a lineman at the top of a telephone pole is not secure, and that there is ever present the hazard of a slipping spur or a rotten piece of wood." We do not think that the case at bar is controlled by the two decisions cited. It will be observed that in the first case the allegation was that at and near this pole and for several feet on each side of it the wire was naked. In the case at bar no such allegation is made, and no inference of that character could be drawn from the petition; besides, the learned Justice based the decision upon the concession of knowledge on the part of Dorsey of the danger and defect in the insulation. The ruling when the *Dorsey* case was the second time before the Supreme Court was based on the fact that Dorsey voluntarily placed himself at a place where the rotten wood of the pole gave way, and the iron spur, which he wore coming in contact with the wire, completed the circuit, thereby causing his death. The cases referred to are clearly distinguishable from the case at bar, as is also the case of *Zachary* v. *Madison,* ante, 490 (89 S. E. 594). The trial judge did not err in overruling the demurrer to the petition as amended.

*Judgment affirmed.*